IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ZVONEK,<br>          **Plaintiff** | : | No. 3:20cv1185 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| POLICE OFFICER BRANDON<br>WALTERS, in his individual and<br>official capacities; DICKSON CITY<br>POLICE DEPARTMENT; DICKSON<br>CITY; and DEBRA BARTHOLD,<br>          **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition are two motions for summary judgment directed at Plaintiff Charles Zvonek's civil rights complaint, one filed by Defendant Debra Barthold and the other filed by Police Officer Brandon Walters, the Dickson City Police Department and Dickson City (collectively "the Dickson City Defendants"). The motions are fully briefed and ripe for disposition.

**Background**

Plaintiff Charles Zvonek and Defendant Debra Barthold have a long history together, and for some time, they were romantically involved. (Doc. 72, Defendants' Statement of Material Facts and Plaintiff's Response Thereto at ¶ 1-7). After being separated for several years, Barthold moved back into a house

with plaintiff in 2015 or 2016. (Id. ¶ 7). Plaintiff and Barthold both had their names on the deed to the house. (Id. ¶ 3). Because of issues between the two individuals, police were called to the neighborhood at least four times during the fall of 2017. (Id. ¶ 12).

In November 2017, plaintiff and Barthold were involved in an incident where the police were called. The police determined the incident was a "mutual simple assault." (Id. ¶¶ 15-17). Following this incident, Barthold sought and was granted a Protection from Abuse Order ("PFA") under Pennsylvania law. (Id. ¶ 18). The terms of the PFA originally prohibited stalking, harassment, and entrance onto the property. (Id. ¶ 19). Eventually, the court amended the PFA to include a "no contact/no hit" provision, allowing plaintiff to return to the house. (Id. ¶ 19). Subsequently, however, the PFA reverted back to its original status, prohibiting plaintiff from entering upon the property. (Id. ¶ 24).

The utilities on the property were in plaintiff's name. (Id. ¶ 26). In June of 2018, plaintiff telephoned the water utility. As a result, the water company disconnected the water service to Barthold's residence. (Id. ¶¶ 29-30). Dickson City Police arrested plaintiff in relation to the disconnection of the water utility. The basis for the arrest was that plaintiff's behavior with the water utility amounted to harassing conduct under the PFA. The parties disagree as to whether the arrest resulted from plaintiff's telephoning the water utility or whether

malicious use and abuse of process under 42 U.S.C. § 1983; Count III, false arrest under 42 U.S.C. § 1983; Count IV, false imprisonment under 42 U.S.C. § 1983; and Count V, conspiracy to violate civil rights, under 42 U.S.C. § 1985. (Doc. 1, Compl.). Plaintiff seeks declaratory relief, compensatory damages, attorneys' fees, and punitive damages. (Id.)

**Jurisdiction**

As plaintiff sues pursuant to 42 U.S.C. § 1983, this court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). This court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

As noted above, the Police Defendants filed a motion for summary judgment, and Defendant Barthold filed a motion for summary judgment. We will address each motion in turn.

## I. The Police Defendants' motion for summary judgment

The Police Defendants move for summary judgment on the following eight claims: 1) Counts I, II, and III of the complaint; 2) Count II of the complaint; 3) Claims against the municipality based upon Monell liability; 4) Failure to train/supervise claims; 5) Claims against individual defendant Officer Walters; 6) Declaratory and injunctive relief claims; 7) Count V, conspiracy to violate plaintiff's civil rights; and 8) Punitive damages.

Pursuant to the plaintiff's consent, the court has already dismissed several of these claims, including: Count II, abuse of process; municipal liability under Monell– including failure to supervise and train; claims against Defendant Walters in his "official" capacity; declaratory relief; claims for injunctive and prospective relief; section 1985 conspiracy; and punitive damages against the City of Dickson and Dickson Police Department.  (See Doc. 73 at 11). Accordingly, no claims remain against Dickson City Police Department/Dickson City and of the Dickson City Defendants, and the only remaining Dickson City Defendant is Police Officer Brandon Walters in his individual capacity.  Thus, for the remainder of this section when the court refers to "defendant," the court is referring to Walters.

The remaining claims which need to be addressed are Count I -malicious prosecution under section 1983; Count III – false arrest under section 1983;

6

Count IV – false imprisonment under section 1983; and punitive damages. Defendant argues that probable cause supported plaintiff's arrest; therefore all of these claims fail. Defendant Walters further argues that he is shielded from liability based upon qualified immunity. The court will address these issues separately.

### A. Probable cause

The remaining claims against Defendant Walters, are malicious prosecution, false arrest, and false imprisonment. The absence of probable cause is an element of all of these claims.[2] Walters argues that probable cause supported the plaintiff's arrest, and accordingly, these claims fail. Plaintiff

---

[2] A section 1983 malicious prosecution action requires the following: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003).
"The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988).
An "arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant" to an arrest made without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995).

7

disagrees. After a careful review, the court finds that judgment should be granted to the defendant on these claims.

"[P]robable cause is defined in terms and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir.2000) (citing Sharrar v. Felsing, 128 F.3d 810, 817–18 (3d Cir.1997)).

The presence of probable cause is generally a jury question. The court, however, may decide at the summary judgment stage that probable cause existed when the evidence, viewed in the light most favorable to the plaintiff, "reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997). To determine whether probable cause exists the court examines the facts in a "commonsense" totality of the circumstances approach. Illinois v. Gater, 462 U.S. 213, 230 (1983).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (quoting United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." Wilson v. Russo,

8

212 F.3d 781, 786 (3d Cir.2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Here, Defendant Walters argues that even when viewed in the light most favorable to the plaintiff, the evidence reveals that probable cause supported the arrest at issue. This evidence includes: his investigation into the matter, his reliance on plaintiff's prior conduct and history with Defendant Debra Barthold, including plaintiff's past contact with utility companies, and his consultation with Lackawanna County Deputy District Attorney ("DDA") Gene Riccardo, who approved the charges. After a careful review, the court agrees.

Previous to the arrest in question, Defendant Walters arrested plaintiff on June 1, 2018 regarding the water utilities as discussed above. (Doc. 63-3, Walters Dep. at 27). With that background, Defendant Walters spoke with Defendant Barthold via telephone on June 29, 2018 regarding the termination of the gas utility at her residence. (Id.) Walters learned that another PFA violation may have occurred and visited Barthold at her residence to investigate the matter. (Id. at 28). Barthold informed Walters that on the previous evening she had arrived home to make dinner. She turned on her stove and it had no gas. (Id.) The gas meter had a lock on it. (Id.) The gas company informed her that plaintiff had shut off the gas. (Doc. 73-4, Exh. C, Affidavit of Probable Cause).

9

Because of the similarity between this incident and the incident regarding the water utility, and the fact that plaintiff pled guilty to a violation of the PFA regarding the water utility incident, Walters believed he had probable cause to arrest plaintiff again for a PFA violation. ((Doc. 63-3, Walters Dep. at 28-29).

Prior to filing the charges, Walters conferred with DDA Riccardo. (Id. at 33). DDA Riccardo handles all the protection from abuse cases and the domestic violence cases for the District Attorney's Office. (Id.) Defendant Walters asked DDA Riccardo if he should arrest plaintiff for violating the PFA. (Id. at 34). DDA Riccardo responded that plaintiff had violated the PFA and Walters should arrest him. (Id.) In other words, DDA Riccardo approved the charges. (Id.)

Specifically, Defendant Walters provided a sworn narrative of his investigation in his "Affidavit of Probable Cause" which provides as follows:

> On 29 June 2018 at approximately 1612 hours, I, Ptlm. Walters received a phone message from the Lackawanna County Communications Center regarding a PFA Violation that occurred last night. I spoke with Debra BARTHOLD, whom [sic] states that last night at approximately 2000-2030 hours, she came home and started to prepare dinner when she turned the oven on and realized it had no gas coming to the oven. She went outside and saw a lock on the gas meter, she called the gas company and asked why she had no gas, the company stated they couldn't explain much, minus that the account holder; Charles ZVONEK had shut the gas off.
>
> Shortly after speaking with BARTHOLD I spoke with DDA Gene Ricardo, whom [sic] is familiar with the case as officers have been involved with several Protection from Abuse Order cases regarding

10

> ZVONEK.  On 01 June 2018, this officer charged ZVONEK with a violation of the Protection from Abuse Order and he plead guilty to the violation on 20 June 2018 in Family Court in Lackawanna County. DDA Riccardo approved the charge of the violation due to ZVONEK knowing from the previous case that all matters regarding 410 Center Street need to be approved by his attorney and DDA Ricardo, along with the fact ZVONEK plead guilty to the previous violation last week.

(Doc. 73-4, Exh. C, Affidavit of Probable Cause).

Based upon the totality of the circumstances, it appears that Defendant Walters had sufficient probable cause for plaintiff's arrest.  He had a report from Barthold that plaintiff had the gas utility to her residence turned off.  Defendant Walters viewed this information in light of the fact that plaintiff had recently pled guilty to a similar arrest on a PFA violation with regard to the water utility.  He then recieved approval from a district attorney for the arrest.

This case is similar to a Pardue v. Gray, 136 F.App'x 529 (3d Cir. 2005), a Third Circuit Court of Appeals opinion affirming a Middle District of Pennsylvania case[3] involving the issue of probable case at the summary judgment stage.  In that case, the arresting officer had probable cause for the arrest based upon: a report from a known and credible witness that the arrestee engaged in criminal conduct; the witness had a visibly upset demeanor and contemporaneous notes

---

[3] Pardue v. Gray, M.D.Pa. Civil No. 3:CV–01–0843 ( Doc. 97, Memo. on Summary Judgment, May 27, 2004) (Blewitt, M.J.).

regarding the incident; and the officer knew the arrestee had a history of similar behavior. Id. at 533.

Plaintiff argues that Defendant Walters lacked probable cause because all he had was Barthold's assertion that plaintiff had removed his name from the gas utility account which in turn disconnected service to the property and the previous guilty plea in the water company incident. Plaintiff asserts that the previous guilty plea is insufficient in itself to provide probable cause and that Defendant Walters did not speak to a representative of the gas company regarding the disconnection of the gas services. Further, plaintiff argues that Walters did not collect any evidence of any kind that plaintiff caused the gas services to be disconnected. Nor did Walters speak to any other witnesses regarding Barthold's allegations. A police officer, however, does not have to undertake an exhaustive investigation to validate probable cause that in his mind already exits. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000) (explaining that no further investigation is needed for probable cause analysis where the arresting officer possessed the credible report of a witness of the alleged crime).

Here, Walters had the report from Barthold of what had occurred, and he knew of plaintiff's history regarding previous PFA issues. Additionally, a deputy district attorney approved the charges. Accordingly, the court finds that the facts

and circumstances in Defendant Walters knowledge are sufficient to warrant a reasonable person to believe than an offense had been committed by plaintiff. Based upon the evidence of record, a jury could not decide otherwise. Accordingly, Defendant Walters had probable cause for plaintiff's arrest and summary judgment will be granted on Counts I, III, and IV.

### B. Qualified Immunity

Defendant Walters also claims that he is shielded from liability based upon the doctrine of qualified immunity.  In the context of police officers as defendants in a civil rights action, qualified immunity "absolves defendants if reasonable officers could have believed their conduct was lawful 'in light of clearly established law and the information the searching officers possessed.' " Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Determining whether qualified immunity applies is a two "step process:" "[f]irst, we must determine whether the defendants violated 'clearly established' rights ... [s]econd, we determine whether a reasonable officer would have believed that his or her conduct deprived plaintiff of his or her constitutional rights." Harvey v. Plains Twp. Police Dept., 421 F.3d 185, 192 (3d Cir.2005).

In the instant case, the court has found above that Defendant Walters did not violate plaintiff's civil rights because probable cause existed for the arrest.

13

Accordingly, the qualified immunity analysis is completed at the first step, defendant did not violate clearly established rights. Accordingly, qualified immunity applies to his actions and summary judgment in his favor will be granted.

### C. Punitive Damages

Because summary judgment will be granted to Defendant Walters on all of the substantive claims against him, the plaintiff cannot recover punitive damages from him. Accordingly, judgment will be granted to Defendant Walters on the punitive damages claim.

## II. Defendant Barthold Motion for Summary Judgment

As noted above, Defendant Debra Barthold also filed a motion for summary judgment. Plaintiff lists Defendant Barthold as a defendant in all the counts with the other defendants. We have found that there is no issue of genuine material fact as to whether probable cause supported plaintiff's arrest. As such, judgment will be also granted to Defendant Barthold. Probable cause existed for plaintiff's arrest; therefore, no malicious prosecution, false arrest, or false imprisonment claims can be pursued against Defendant Barthold.

## Conclusion

For the foregoing reasons, the defendants' motions for summary judgment will be granted. An appropriate order follows.

Date: 2/23/24

JUDGE JULIA K. MUNLEY
United States District Court